[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiffs have sued the defendants in six counts. The counts sound in breach of contract, detrimental reliance, fraud in the inducement, negligence, unfair trade practices, and breach of the common law covenant of good faith and fair dealings. Essentially, the plaintiffs claim that the defendants are legally responsible to them for the lack of potability of their water, and the resulting damages. This matter was tried before the court. Both of the plaintiffs and both of the defendants testified; no other witnesses were called. No expert testimony was offered. Numerous exhibits were entered.
From the evidence presented, the following facts are found. In early 1995, the plaintiffs, Christine Savarese (also known, previously, as Christine Kaspryzychi) and Michael Kaspryzychi were engaged to be married. They were looking to buy a home in which to share their marriage together; they were both first time home buyers. In response to a leaflet containing real estate being offered for sale, the parties contacted the defendant Linda Gargano, the real estate agent for the property. Gargano, at that time, was an agent in the office of John T. Appel, a broker doing business as RE/MAX Realty 100. Appel, the other defendant was the broker. Gargano showed the plaintiffs the property at 923 Clintonville Road, Wallingford, which they had seen in the real estate leaflet. They looked at it several times. They made a written offer for the purchase of the property on January 16, 1995. Attached to their offer CT Page 2234 was a disclosure that the RE/MAX office were agents of the seller. The offer was not accepted by the property owner.
On February 15, 1995, the plaintiffs made another offer for the purchase of the property. In the offer, in lieu of a name, the seller was stated as `owner of record'. The offer was accepted, and Wagner Construction, Inc., by its president David Wagner, signed as the owner/seller. The contract for the purchase and sale of the real estate at 923 Clintonville Road, Wallingford provided the plaintiffs the opportunity to have a home inspection performed on the property within 7 days of the contract, and the right to rescind the contract within 3 days thereafter if displeased with the results of the inspection.
The plaintiffs retained DREI, Inc. to inspect the property. DREI, Inc. had been recommended to the plaintiffs by the defendant Gargano. The plaintiffs were present when the home inspection was performed. While DREI, Inc.'s services did not include testing of the water for potability, it did include running the water from the faucet to check on its working order. In so doing, DREI's inspection discovered the presence of sand in the water at the subject property. The plaintiffs observed it from the faucet. They reported it to Gargano who told them that it was probably the result of some well work that had been recently done, and, that it would be cured prior to closing. The plaintiffs did not exercise their right to rescind the contract as a result of the condition of sand in the water.
The plaintiffs' financing for the purchase of the property was through People's Bank, for a FHA mortgage, as first time home buyers. One requirement for the procurement of the mortgage was the testing of the well water for potability. On March 23, 1995, Gargano, on behalf of the plaintiffs, collected a water sample from the tap at the subject property. The water was tested and the test results indicated that the water, "meets State standards for potable water" and that there was an "absence of coliform".
The plaintiffs received their mortgage from People's Bank for the purchase of the property. On or about April 13, 1995, a closing was held, at which the plaintiffs purchased the property. At that time, they received a warranty deed for the property from the defendant, John T. Appel, then the record title owner of the property. He had purchased the property the day before as a part of a larger piece which included building lots. When he purchased the property he knew there had been sand in the water but he thought the problem had been remedied.
The plaintiffs did not take immediate physical possession of the CT Page 2235 property after the closing. The occupant at the time of closing remained for a period of time. After some days to weeks, she vacated and the plaintiffs took possession of the property. Upon taking possession they commenced to use the water for cleaning and immediately noticed sand in the water. That was reported to the defendant Gargano by the plaintiffs.
Meanwhile, although People's Bank had provided the money and mortgage at the closing, their underwriting requirements included a more detailed water test results report. The bank's representative, Mr. DiMeo, went out to the property with Appel on April 21, 1995, while the prior occupant was still in possession, collected another water test. That test result indicated that the water was not potable under State standards, that coliforms were present, and that the water exceeded State standards for total coliform and turbidity. These results were presented to the plaintiffs.
The plaintiffs neither drank the water, nor used it for bathing or washing their dishes. Appel tendered $371.00 to the plaintiffs to pay for work done by Hungerford to address the sand in the water. That check was never cashed by plaintiffs; it had an endorsement through defendant Appel's attorney that acceptance of the check would be full and final settlement of all of the plaintiffs' claims. Appel retained DREI, Inc. to locate, dig up and evaluate the well for $125.00. The defendant Appel retained Sima Drilling to perform services on the well. Based upon information Appel had gathered, as to how to cure the water lack of potability, he hired Sima to raise the casing of the well and install a new pump. This work was done on June 14, 1995. Appel paid Sima $1,164.49 for this work. As a part of its work, Sima took a water sample from the well for testing. The water testing date was June 22, 1995. The test results report showed the water to be potable and with absence of coliform. The evidence presented at trial does not disclose whether the water test results were ever presented to the plaintiffs. Appel undertook no other work at the property regarding the water.
Somewhere about October through December, 1996, public water was brought to the properties in the neighborhood of 923 Clintonville Road, Wallingford, including the plaintiffs' property. The plaintiff Christin Savarese believed the water main was brought in by the municipality because other property owners in the neighborhood had complained of potability problems with their well water. The plaintiffs incurred numerous costs for water main service, both the Town assessment and the costs incurred bringing the service to the house. The total assessment cost was $6,111.00 which was fully paid by the plaintiffs. They also paid $1,387.10 to other service providers to trench the water to the house. CT Page 2236
The plaintiffs sold the property at 923 Clintonville Road, Wallingford for $175,000.00 in October, 1999. This was $28,500.00 more than they had paid for the property in April, 1995.
As to each of the causes of action contained in the Revised Complaint alleged against the defendants, the plaintiffs have the burden of proof, by a fair preponderance of the evidence that the water at the subject property was not potable, when the property was purchased. The plaintiffs have not met this burden of proof. The court finds that the water was potable on March 23, 1995. The court finds that the water was not potable on April 21, 1995. The court finds that the water was again potable, after work at the premises paid for by the defendant Appel on June 22, 1995. There is no expert testimony or fact evidence before this court as to whether the water was unpotable on April 13, 1995. Further, there is no evidence before this court from which this court can infer that it was unpotable on April 13, 1995 if it was unpotable on April 21, 1995. Because of this, the plaintiffs' cause must fail before the court can reach the remaining essential elements of each of the causes of action. The court enters judgment for the defendants on all counts.
So Ordered.
By the Court
Munro, J.